## PRUDENTIAL INS. CO. OF AMERICA v. SUCCESSION OF FONTENOT.
### No. 1416.

Court of Appeal of Louisiana. First Circuit.
Jan. 21, 1935.

Modisette & Adams, of Jennings, for appellant.

Pugh & Buatt, of Crowley, for appellee.

LeBLANC, Judge.

On February 7, 1931, Viale M. Fontenot executed a mortgage in favor of the plaintiff herein, the Prudential Insurance Company of America, to secure a loan in the sum of $7,500, represented by the mortgagor's note for that amount. The property mortgaged is described in the act of mortgage as consisting of several tracts of land all situated in the parish of Acadia, and aggregating 350.90 acres.

During the existence of the mortgage, Viale M. Fontenot died, and, after his death, although under circumstances which are not shown, it appears that Paul Christ, defendant in the present proceeding by rule, occupied the property or a part of it.

The Prudential Insurance Company, as plaintiff, who will be referred to hereafter as mortgagee, seemed anxious, if we are to judge from letters written by Mr. Henry T. Duson, its agent at Crowley, to have Christ farm the property, in an effort no doubt to obtain some revenues to be applied on their loan. Of course, it did not own the property and could not lease it to Christ, so they endeavored to have Mrs. Fontenot, the widow, waive the rent, as far as she was concerned. It may be stated here that Mrs. Fontenot did not waive any right she may have had in the property.

On May 16, 1933, we find Paul Christ appearing before a notary public at Eunice, La., in the parish of St. Landry, for the purpose of executing an act of pledge in favor of Louisiana Oil Refining Corporation, on a rice crop to be produced by him during that year on land described in the act as follows:

"Four fifths ($\frac{4}{5}$) of North one hundred sixty (160) acres of a tract of 320 acres belonging to Estate of V. M. Fontenot, deceased, abandoned to Prudential Life Insurance Company of America; mortgagee, the other one fifth ($\frac{1}{5}$) of crop going to the said Prudential Life Insurance Company of America as land rent, the whole of the said 320 acres being

bounded North by public road, South by Joseph Ruppert & Dupre Manuel, East by Public Road, and West by Mrs. Marie M. Christ."

Under what theory, in the absence of any waiver on the part of any one authorized by the succession of Viale M. Fontenot, could the insurance company become a landlord and lessor of this property we are unable to determine. Be that as it may, Paul Christ appears to have remained in possession of the property and did cultivate the crop of rice with the advances made to him by the Louisiana Oil Refining Corporation, under the pledge given by him to secure the same. On September 6, 1933, the Prudential Insurance Company took steps to foreclose on the mortgage it held against the succession of Viale M. Fontenot. In conformity with the orders of court, the writ of seizure issued on September 12, 1933, the seizure was made on the same date, and Paul Christ was appointed keeper of the property by the sheriff. At the sale under foreclosure, the property did not bring near enough to satisfy the mortgage debt and it was adjudicated to the Prudential Insurance Company. The adjudication was made on October 21, 1933, and on January 25, 1934, the Prudential Insurance Company instituted this proceeding by rule.

In its petition, plaintiff alleges that at the time of the seizure of the property, the rice crop of 1933 was still standing, uncut and unsevered from the soil; that Paul Christ harvested it, stored it in a warehouse at Eunice, La.; that it was afterwards graded and shipped to a milling company at New Iberia and sold for the sum of $1,557.28. Plaintiff alleges that the one-fifth of the proceeds of the crop, which Christ recognized in the act of pledge as being due for rent, amounted to the sum of $311.45, and that he has refused to surrender the same, as keeper of the property, although demand has been made on him by both plaintiff and the sheriff of Acadia parish. The prayer of the petition is for the issuance of a rule on Paul Christ, ordering him to show cause on a fixed date why he should not deliver the one-fifth of the proceeds of the rice crop to plaintiff, in accordance with the adjudication, and, in default, why he should not be dealt with summarily and evicted from the premises and ordered to pay over money in the sum of $311.35, as rent; or, as a final resort, why he should not be punished for contempt for failure to comply with the orders of court. The court issued the order to show cause,

making the rule returnable on February 17, 1934.

In his answer to the rule, Paul Christ averred that he had moved off of the property prior to service being made on him and that as to the claim for surrender of the one-fifth of the proceeds of the rice, he had refused to pay the same to plaintiff or the sheriff for the reason that the crop had been severed from the soil prior to the seizure of the property and therefore it was not covered by the mortgage.

The lower court rendered judgment, without assigning written reasons therefor, in which it dismissed plaintiff's rule at its costs, but reserved to it the right to bring a civil suit against the defendant in rule, for whatever amount it might claim against him. From that judgment, the plaintiff has taken this appeal.

By the terms of article 466 of the Civil Code, it is provided that "the fruits of an immovable, gathered or produced while it is under seizure, are considered as making part thereof, and inure to the benefit of the person making the seizure." By referring again to the allegation of plaintiff's petition to the effect that at the time of the seizure, the rice crop of 1933 was still standing, was uncut, and unsevered from the soil, which is denied by the defendant, it will be seen that this was the controlling issue in the case.

Plaintiff produced four witnesses who testified regarding the time at which the defendant had cut the rice in question. One of these witnesses, Lawrence Francois, worked on a farm in the same neighborhood, and whilst he says that he remembers seeing the defendant cutting his rice, is not positive as to the time. Another, Louis Francois, worked on the same farm as Lawrence. He says that when they were cutting rice in October, Christ was also cutting his. Raymond McManus, the farmer they worked for, testifies that he cut his rice in October, which, of course, was after the seizure of the Fontenot property. Whilst he does say that defendant was cutting about the same time, he significantly adds: " * * * Of course I didn't pay no attention to him, when he was going to start or finish. * * *" John A. Whitman, fieldman for the Prudential Insurance Company, says that he is positive that the defendant's rice was not cut in the latter part of September as he made an inspection of the property at that time and made a report of the inspection to his company. Whilst this last witness' testimony seems to be rather

positive, it appears that his recollection, as well as that of all of plaintiff's witnesses, is based on some independent or collateral matter not directly connected with the actual cutting of the rice.

Defendant, on the other hand, produced the testimony of five witnesses, besides his own, to prove that he started cutting his rice on September 1st and finished on September 11th, which was the day before the seizure. These witnesses all worked for him. They were the ones who harvested his crop with him, and, in giving their testimony, they are referring to a matter they had a direct connection with and do not rely on some independent source for their recollection.

We take it, that in deciding this issue, the trial judge accepted the testimony of these witnesses to the effect that on September 11, 1933, the rice had all been gathered, and, consequently, when the seizure was made on the following day, any of the proceeds could no longer be claimed as rent or fruits inuring to the benefit of the one who had made the seizure of the property. We can see no reason why we should disagree with the district judge in this finding of fact, and, once accepted, it follows, as a legal consequence, that the seizure did not cover the crop or any of its proceeds, and these did not go with the adjudication of the property to the plaintiff, adjudicatee.

It is to be noted that the prayer of plaintiff's petition is that defendant be ordered to show cause "why he should not deliver * * * in accordance with the adjudication of the said property, including the proceeds of one fifth of the rice crop as rent. * * *" This can be construed in no other way than as a demand that the proceeds of the crop, to the extent mentioned, be turned over as part of the adjudication, which could only be done in the event the crop had been gathered while the land was under seizure. After thus linking this one-fifth of the proceeds of the crop with the adjudication of the property in its demand, plaintiff then asks that defendant be dealt with summarily and that he be ordered to pay over in money the sum of $311.45, which represented one-fifth of the proceeds of sale of the rice, as rent. The rent, as thus claimed, cannot, un-

der the finding of fact that the crop had been gathered before the seizure of the property was made, be classed as an incident of the adjudication. It cannot therefore be demanded in a proceeding by rule, but can only be recovered in an independent action against the defendant, the right to bring which the judgment of the lower court expressly reserved to the plaintiff.

Counsel for plaintiff endeavors to draw a distinction with regard to the rents and revenues of a property which has been seized in cases where the property is held by a tenant, contending that in a case like the present, it is immaterial whether the crops are cut or severed or not, at the time of the seizure, so far as the rights of the landlord and his share of the rents are concerned. But it is to be recalled, as we stated at the beginning of this opinion, that the plaintiff here was not the owner of the property, but only a mortgage creditor at the time of the execution of the act of pledge by defendant, in which it was declared that a part of the crop would go to the plaintiff, as rent. Plaintiff did not pretend to be the owner of the property. This is very well indicated by the letters of its agent Duson in trying to secure the waiver of rent from the widow of Viale Fontenot, whose estate was still the owner. Not being the owner, plaintiff could not be the landlord, which capacity it would have to enjoy in order to claim the distinction counsel would have the court adopt, if indeed any such exists at all.

Granting that the declaration referred to and contained in the act of pledge executed by defendant amounted to a stipulation for the benefit of a third party, under the provisions of Civil Code, art. 1890, as contended by counsel, we do not think that it avails the plaintiff anything in the present proceeding, under the view we take of the case. If plaintiff has any right that it can enforce under such a stipulation, it can test it in a proper proceeding, but the mere enjoyment of the stipulation does not, of itself, give rise to the summary process.

We are of the opinion that the judgment of the lower court properly rejected the demand of the plaintiff as herein presented, and it is therefore affirmed.